**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL WILLYOUNG, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:08-cv-17-SJM |
| | ) | |
| COLORADO CUSTOM HARDWARE, INC., *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J. District J.,

Plaintiff Michael Willyoung was seriously injured after sustaining a fall while rock climbing in the Red River Gorge in Slade, Kentucky.  In this products liability action, Plaintiff, a citizen of Pennsylvania, alleges that the anchor he was using – referred to a an "alien cam" – was defective, unreasonably dangerous and the proximate cause of his injury.  He has sued Colorado Custom Hardware, Inc. ("CCH"), a Wyoming corporation which manufactured the subject Alien cam and The Bent Gate, Inc. t/d/b/a Bent Gate Mountaineering ("BGM"), a Colorado corporation from which the Alien cam was purchased.  His two-count complaint alleges claims against each Defendant respectively under theories of negligence, strict liability and breach of express and/or implied warranties.  This Court has subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1332, as the parties' citizenship is diverse and the amount in controversy exceeds $ 75,000 exclusive of interest and costs.

Presently pending before the Court are the Defendants' motions to dismiss the instant action for lack of personal jurisdiction.  For the reasons that follow, CCH's motion to dismiss will be granted and BGM's motion will be denied.

## I.  STANDARD OF REVIEW

When a defendant challenges personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff has the burden of proof to establish "jurisdictional facts through sworn affidavits or other competent evidence." *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir.1990) (quotation omitted).  *See also D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009); *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007); *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007).  In reviewing a motion to dismiss for lack of in personam jurisdiction, we accept all of the plaintiff's allegations as true and construe disputed facts in his favor.  *See D'Jamoos*, 566 F.3d at 102; *Marten*, 499 F.3d at 295 n. 2; *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir.1992).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Defendant CCH is a Wyoming corporation with its principle place of business in Laramie, Wyoming.  Defendant BGM is a Colorado corporation with its principle place of business in Golden, Colorado.  Plaintiff alleges that, at all times relevant to his claims, the Defendants were engaged in the business of designing, manufacturing, supplying, selling and/or distributing mountain climbing products and, in particular, a product commonly known as camming anchors or alien cams.

Plaintiff purchased the subject alien cam directly from BGM on or about March 2, 2007 and had it shipped to him in Pennsylvania.  It is unclear whether the unit that was shipped to Plaintiff was actually purchased by him personally, since the order was entered on behalf of "Samra Boukadida," with a New York billing address.  The Plaintiff did not directly purchase this product from CCH or deal with any salesperson from CCH.  The unit was received by the Plaintiff in Pennsylvania, where he resides, and later utilized by him in Kentucky, where he was injured while rock climbing.

CCH does not own any real estate in the Commonwealth of Pennsylvania and has no dealers or retail outlets within the Commonwealth.  It does not engage in any

direct advertising or sales of its products to consumers in the Commonwealth of Pennsylvania or in any other states, as it is a wholesaler which sells and supplies its products to various distributors and retailers throughout the country.  CCH does not pay business or other taxes in the Commonwealth of Pennsylvania and has not been previously sued in the Commonwealth or consented to its jurisdiction.  It has not advertised in Pennsylvania, has no agents or representatives in Pennsylvania, and has not participated in any shows, exhibits, or competitions in Pennsylvania.

Presently CCH has no active retailers in Pennsylvania and did not sell any of its products through Pennsylvania retailers in 2008.  However, between 2000 and 2007, CCH sold approximately 47 cams to a retail store known as "Excursion," located in Monroeville, Pennsylvania.  During this same time period, CCH produced and sold between 12,000 and 15,000 cams per year or between 96,000 and 120,000 cams in total.  Thus, the percentage of products sole to Excursion, CCH's only Pennsylvania retailer, during the years 2000 to 2007 comprised only about .04% - .05% of CCH's total products sold.  During the years 2005, 2006 and 2007, respectively, CCH's sales to Excursion comprised at most .02%, .01% and .005% of its total products sold.

Apart from these sales to Excursion during 2000-2007, CCH professes no specific awareness of sales to Pennsylvania retailers.  CCH acknowledges that it sells its products to various retailers throughout the country, some of which maintain business locations within the Commonwealth of Pennsylvania, but CCH contends that it does not know whether those retailers specifically sell CCH products in the facilities that are located within the Commonwealth.  However, CCH asserts that, to the extent its products are sold by various other retailers located within the Commonwealth, those sales are at best minimal.

BGM is a Colorado corporation with its principal place of business in Golden, Colorado.  It does not own any real estate in Pennsylvania, nor does it pay business or other taxes in the Commonwealth.  BGM has not previously been sued in the Commonwealth, nor has it consented to jurisdiction here.  It has no dealers, agents  or

retail outlets in Pennsylvania and does not engage in direct advertising or sales of its products to Pennsylvania consumers.  BGM does not operate a mail order business and all orders for its products are received either through direct contact with in-store customers, on-line, or by telephone.

While BGM does sell and supply its products to consumers who may reside in the Commonwealth, these sales are conducted through its website and, according to BGM, are minimal.  BGM represents that, for the year 2006, Pennsylvania sales accounted for only $18,572.66 – or .07% – of its total web sales revenue.  For the year 2007, Pennsylvania sales accounted for some $22,993.39 – or .08% – of its total web sales revenue.

As its data pertains more specifically to alien cams, BGM reports that, between January 1, 2006 and December 31, 2007, it received 216 online or telephone orders for CCH alien cams and, of these 216 orders, only two were shipped to Pennsylvania.  Of these two orders, one was the Plaintiff's; as is noted above, the product which was shipped to Plaintiff was actually purchased by "Samra Boukadida," with a New York billing address.  The other order was purchased by a Pennsylvania addressee but the item was shipped to Florida.  Accordingly, of the 216 orders taken in that two-year period, only two – or .013% of the orders – had a connection to Pennsylvania. Moreover, for that 2-year period, BGM sold a total of $328.92 worth of CCH products that were shipped to Pennsylvania.

Based on the foregoing facts, the Defendants initially filed motions to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) in April and May of 2008. This Court subsequently denied the motions without prejudice and granted the Plaintiff 120 days in which to conduct jurisdiction-related discovery.  Discovery was completed and the instant motions were filed.  The matter is now ripe for disposition.

### III.  DISCUSSION

Federal district courts "may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos*, 566 F.3d at 102 (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987).  *See also Marten*, 499 F.3d at 296; *O'Connor*, 496 F.3d at 316.  This technically involves a two-step inquiry whereby courts first determine whether the forum state's long-arm statute extends jurisdiction to the nonresident defendant, and then determine whether the exercise of that jurisdiction would comport with federal due process principles.  *See Pennzoil Products Co. v. Colelli & Associates, Inc.*, 149 F.3d 197, 202-03 (3d Cir. 1998).

Here, Pennsylvania's Long-Arm Statute, 42 Pa. C.S.A. § 5322, allows for specific personal jurisdiction to be exercised over non-residents pursuant to two separate provisions.  Subsection (a) provides, in relevant part:

> **(a) General rule.--**A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:
>
>> (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:
>>
>>> (i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.
>>>
>>> (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.
>>>
>>> (iii) The shipping of merchandise directly or indirectly into or through this Commonwealth.
>>>
>>> (iv) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by any government unit of this Commonwealth.
>>>
>>> (v) The ownership, use or possession of any real property situate within this Commonwealth.

42 Pa. C.S.A. § 5322(a) (2009) (internal footnote omitted).  Of these provisions, the

only one that has been invoked by the Plaintiff is § 5322(a)(1)(iii), pertaining to "[t]he shipping of merchandise directly or indirectly into or though this Commonwealth."  *Id*. at § 5322(a)(1)(iii).

Pennsylvania's Long-Arm Statute also allows for the exercise of personal jurisdiction pursuant to § 5322(b).  That provision states as follows:

> **b) Exercise of full constitutional power over nonresidents.--**In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

42 Pa. C.S.A. § 5322(b) (2009).

As we note above, the determination of personal jurisdiction is technically a two-step process whereby we first consider whether the Commonwealth's Long-Arm Statute provides a basis for personal jurisdiction and then test the exercise of that jurisdiction against due process principles.  *See Pennzoil Products Co., supra*, at 202-03. However, because § 5322(b) of the Long-Arm statute authorizes jurisdiction to the fullest extent permissible under the U.S. Constitution, Pennsylvania courts typically restrict their personal jurisdiction inquiry to the question whether the exercise of personal jurisdiction over the nonresident defendant would be constitutional.  *See id.* at 200 (3d Cir. 1998) ("A district court's exercise of personal jurisdiction pursuant to Pennsylvania's long-arm statute is therefore valid as long as it is constitutional."); *Renner v. Lanard Toys Limited*, 33 F.3d 277, 279 (3d Cir. 1994) ("[T]his court's inquiry is solely whether the exercise of personal jurisdiction over the defendant would be constitutional."); 4A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069 (3d ed. 2002)("[B]ecause a majority of states (and Puerto Rico) have enacted jurisdictional statutes that either have expressly incorporated the due process standard or have been interpreted to extend to the limits of due process,[ ] this analysis frequently is collapsed by the federal court into a one-step inquiry:  does the assertion of personal jurisdiction satisfy the requirements of due process?") (internal footnote

omitted).

Because our analysis essentially focuses on federal due process principles, we determine the existence *vel non* of personal jurisdiction by asking whether the nonresident defendant has "certain minimum contacts" with this Commonwealth such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See D'Jamoos*, 566 F.3d at 102 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  We also recognize two types of in personam jurisdiction:  general and specific.  General jurisdiction results from, among other things, the non-resident defendant's "systematic and continuous" contact with the forum state. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).  Where general jurisdiction exists, the forum state may exercise personal jurisdiction over the non-resident defendant even for non-forum-related activities.  Specific jurisdiction, on the other hand, allows for the exercise of personal jurisdiction over a non-resident defendant for actions arising out of or relating to the defendant's contact with the forum. *See Mellon Bank (East) PSFA, Nat'l Assn. v. Farino*, 960 F.2d 1217, 1221 (3d Cir.1992).  Here, there is no claim of general jurisdiction and the parties agree that, if personal jurisdiction exists, it is specific.

In determining whether specific personal jurisdiction exists over these Defendants, we are directed to undertake a three-part inquiry.  *See D'Jamoos*, 566 F.3d at 102; *Marten*, 499 F.3d at 296.  Our circuit describes that inquiry as follows:

> First, the defendant must have "purposefully directed [its] activities" at the forum.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (internal quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities.  [*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)]; *O'Connor*, 496 F.3d at 317.  And third, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.' " *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 (quoting Int'l Shoe, 326 U.S. at 320, 66 S.Ct. at 160).

*D'Jamoos*, 566 F.3d at 102.

The first two inquiries are concerned with determining whether the defendant has

7

the requisite minimum contacts with the forum. *Id*. "The threshold requirement is that the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Id*. (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). *See O'Connor*, 496 F.3d at 317. It is not necessary, for purposes of this requirement, to show that the defendant physically entered the forum state. *D'Jamoos*, 566 F.3d at 103; *O'Connor*, 496 F.3d at 317. Nevertheless, the defendant's contacts must amount to "a deliberate targeting of the forum." *D'Jamoos*, 566 F.3d at 103 (quoting *O'Connor*, 496 F.3d at 317). Unilateral activity on the part of a plaintiff claiming "some relationship with a nonresident defendant" is insufficient. *Id*. (quoting *Hanson*, 357 F.3d at 253); *O'Connor*, 496 F.3d at 317 (same).

Assuming the defendant can be shown to have purposefully directed its activities at the forum state, then it must next be shown that the litigation "arises out of or relate[s] to" at least one of those contacts. *O'Connor*, 496 F.3d at 318. Although the Supreme Court has not yet expounded on the scope of this requirement, our circuit court of appeals has recently clarified that it encompasses, as a necessary starting point, the concept of "but-for causation," *see id*. at 322-23, meaning that "the plaintiff's claim would not have arisen in the absence of the defendant's contacts." *Id*. at 319. The Third Circuit has made clear that "but-for causation" is a "useful starting point for the relatedness inquiry," but it is not the end of the inquiry, *id*. at 322, for "specific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test." *Id*. at 323. Although "there is no 'specific rule' susceptible to mechanical application in every case," *id*., and the inquiry is "necessarily fact-sensitive," *id*., our Court of Appeals has explained that

> the analysis should hew closely to the reciprocity principle upon which specific jurisdiction rests. *See Burger King*, 471 U.S. at 475-76, 105 S. Ct. 2174. With each purposeful contact by an out-of-state resident, the forum state's laws will extend certain benefits and impose certain obligations. *See Int'l Shoe*, 326 U.S. at 319, 66 S.Ct. 154. Specific jurisdiction is the cost of enjoying the benefits. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir.2004) ("In return for the[ ] benefits and protections [of a state's laws,] a defendant must-as a quid pro quo-submit to the burdens of litigation in that forum.") (quotations

8

> marks omitted); *Coté v. Wadel*, 796 F.2d 981, 984 (7th Cir.1986)
> ("Personal jurisdiction over nonresidents of a state is a quid for a quo that
> consists of the state's extending protection or other services to the
> nonresident."). The relatedness requirement's function is to maintain
> balance in this reciprocal exchange. In order to do so, it must keep the
> jurisdictional exposure that results from a contact closely tailored to that
> contact's accompanying substantive obligations. The causal connection
> can be somewhat looser than the tort concept of proximate causation, *see*
> *Miller Yacht*, 384 F.3d at 99-100, but it must nonetheless be intimate
> enough to keep the quid pro quo proportional and personal jurisdiction
> reasonably foreseeable.

*Id*. (alterations in the original).

Assuming that sufficient minimum contacts can be established between the nonresident defendant and the forum state, courts will consider whether the exercise of jurisdiction would otherwise comport with "traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 324 (quoting *Int'l Shoe*, 326 U.S. at 316). Because the existence of minimum contacts makes jurisdiction presumptively constitutional, the defendant at step three of the specific-jurisdiction-inquiry process "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id*. (quoting *Burger King*, 471 U.S. at 477). The burden upon the defendant at this stage of the inquiry is considerable. *See Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir.1998) (noting that if minimum contacts are present, then jurisdiction will be unreasonable only in "rare cases"); *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir.1993) ("The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy."). As our Circuit Court has observed:

> The Supreme Court has identified several factors that courts should
> consider when balancing jurisdictional reasonableness. Among them are
> "the burden on the defendant, the forum State's interest in adjudicating
> the dispute, the plaintiff's interest in obtaining convenient and effective
> relief, the interstate [and international] judicial system's interest in
> obtaining the most efficient resolution of controversies," *Burger King*, 471
> U.S. at 477, 105 S.Ct. 2174 (quotation marks omitted), and "[t]he
> procedural and substantive interests of other nations." *Asahi Metal Indus.*
> *Co. v. Superior Court*, 480 U.S. 102, 113, 115, 107 S.Ct. 1026, 94
> L.Ed.2d 92 (1987).

*O'Connor*, 496 F.3d at 324.

9

A.

Bearing the foregoing legal principles in mind, I first consider the motion of CCH to dismiss this case for lack of personal jurisdiction.  Plaintiff contends that we should confer personal jurisdiction over CCH "because of the significance of its actions in commercially targeting Pennsylvania through its retailer, Exkursion [sic], over the course of seven years, from 2000-2007."  (Br. in Supp. of Pl.'s Response to CCH's Renewed Mot. to Dismiss [23] at p. 10.)  Plaintiff observes that, under Pennsylvania's Long-Arm statute, the "shipping of merchandise directly or indirectly into or through this Commonwealth" qualifies as one form of "[t]ransacting any business in this Commonwealth."  *See* 42 Pa. C.S.A. § 5322 (a)(1) (iii) and (a)(1) (2009).

However, Pennsylvania's Long-Arm Statute is clear that, "[w]hen jurisdiction over a person is based solely upon this section," *i.e.,* specific jurisdiction under § 5322, "only a cause of action ... arising from acts enumerated in subsection (a), or from acts forming the basis of jurisdiction under subsection (b), may be asserted against him."  42 Pa. C.S.A. § 5322(c).  In other words, while CCH may have "transacted business" in Pennsylvania by virtue of its sales to the retailer Excursion, only a cause of action arising from those sales may serve as the basis for exercising jurisdiction pursuant to § 5322(c).  Accordingly, because none of CCH's sales to Excursion gave rise to Plaintiff's purchase of the allegedly defective alien cam that is the subject of this lawsuit, those transactions cannot serve as the basis for personal jurisdiction under § 5322.  Similarly, under federal due process principles, the Plaintiff has not alleged that this litigation "arise[s] out of or relate[s] to" CCH's business transactions with Excursion.  *See D'Jamoos,* 566 F.3d at 102.  As we have discussed above, this second prong of the specific jurisdiction inquiry requires, as a starting point, "but-for causation," meaning that "the plaintiff's claim would not have arisen in the absence of the defendant's contacts."  *O'Connor,* 496 F.3d at 319.  *See id.* at 322-23.  Because this prong is not satisfied under the facts of this case, specific jurisdiction does not exist by virtue of CCH's past sales relationship with Excursion.  Were we to conclude otherwise,

10

we would be impermissibly blurring the line between general jurisdiction and specific jurisdiction; at least in this circuit, these two types of jurisdiction have always been treated as "analytically distinct categories, not two points on a sliding scale." *O'Connor*, 496 F.3d at 321.

Plaintiff alternatively asserts, somewhat vaguely, that CCH has the necessary minimum contacts with this Commonwealth by virtue of the fact that "CCH is also a wholesale supplier to [BGM], which marketed CCH products to Pennsylvania residents." (Br. in Supp. of Pl.'s Response to CCH's Renewed Mot. to Dismiss [23] at p. 14.) Because he does not develop this argument, it is not clear whether Plaintiff is asserting a "stream of commerce" theory as a basis for asserting that personal jurisdiction exist over CCH. *See D'Jamoos*, 566 F.3d at 104-05 ("Courts have relied on the stream-of-commerce theory to find a basis for personal jurisdiction over a non-resident defendant, often a manufacturer or distributor, which has injected its goods into the forum state indirectly via the so-called 'stream of commerce.'").

In *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987), the Supreme Court addressed the elements of jurisdiction under the stream-of-commerce theory. Although the Court was unanimous in holding that there could be no personal jurisdiction consistent with due process based on the facts before it, no majority of the Justices could agree on the precise standards for establishing "purposeful availment" in the context of the stream-of-commerce theory. Our Court of Appeals has cogently summarized the resulting split of opinions on this point:

> In Part II-A of the opinion, writing for a plurality of four, Justice O'Connor found that the mere placement of a product into the stream of commerce with an awareness that it may end up in a particular state was not enough to establish minimum contacts. "[A]dditional conduct ... [that] may indicate an intent or purpose to serve the market in the forum State" is needed before personal jurisdiction can be exercised over the defendant, *id*. at 112, 107 S. Ct. at 1032, because "minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,'" *id*. at 111, 107 S. Ct. at 1031 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985)).
>
> Justice O'Connor provided the following examples of the type of "additional conduct" needed to establish purposeful availment and, therefore, minimum contacts: "designing the

11

product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112, 107 S. Ct. at 1032.  Justice O'Connor concluded:

> [A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id.*

> Justice Brennan, writing for four Justices in a concurring opinion, disagreed with this interpretation of the "stream of commerce" theory.  He believed that if there is a "regular and anticipated flow of products from manufacture to distribution to retail sale" and the defendant is aware that the final product is being marketed in the forum state, no additional conduct on the defendant's part need be shown to establish minimum contacts.  *Id.* at 117, 107 S.Ct. at 1034.

> Justice Stevens, the ninth vote, wrote a short concurring opinion (joined by Justices White and Blackmun who had also joined Justice Brennan's opinion).  He rejected the plurality's assumption that "an unwavering line can be drawn between 'mere awareness' that a component will find its way into the forum State and 'purposeful availment' of the forum's market."  *Id.* at 122, 107 S.Ct. at 1037.  He stated that whether or not Asahi's conduct, which was arguably more than the placement of a product into the stream of commerce, rises to the level of purposeful availment "requires a constitutional determination that is affected by the volume, the value, and the hazardous character of the components."  *Id.*  He concluded that in most cases a regular course of delivering over 100,000 units annually would constitute "purposeful availment."  *Id.*

*Renner*, 33 F.3d at 281-82.

The Third Circuit Court of Appeals has not yet determined which, if any, of these alternative standards should govern the analysis of stream-of-commerce cases in this jurisdiction.  *See D'Jamoos*, 566 F.3d at 105 n. 15.  Nevertheless, it is at least clear that the defendant must have engaged in "purposeful availment" of the forum state and, "[e]ven under Justice Brennan's view, the mere knowledge or awareness that one's products will end up in the forum state without some regularity of shipment would not be enough."  *Renner*, 33 F.3d at 282.

Here, the allegedly defective product was manufactured by CCH in Wyoming and distributed to BGM in Colorado.  From there, it was purchased either by phone or internet and shipped to the Plaintiff in Pennsylvania.  BGM represents that, between 2006 and 2007, it sold only $328.92 worth of CCH products that were then shipped to recipients in Pennsylvania.  In addition, it sold only two CCH alien cams during this

12

same period which had a connection either to a Pennsylvania purchaser or recipient.

As I have noted above, it is the Plaintiff's burden on a Rule 12(b)(2) motion to establish the existence of jurisdictional facts, even though we are required to accept his allegations as true and construe factual disputes in his favor.  *See D'Jamoos*, 566 F.3d at 102.  Here, Plaintiff has failed to allege any facts that would establish "purposeful availment" on the part of CCH as it relates to the stream of commerce through which the allegedly defective product came into the Plaintiff's possession.  Rather, CCH's indirect involvement with Pennsylvania via this "stream" appears to be incidental, rather than purposeful.  *See Renner*, 33 F.3d at 282 (The defendant's contact with the forum state "must be purposeful, rather than incidental, because the stream of commerce does not refer to 'unpredictable currents or eddies.'") (quoting *Asahi*, 480 U.S. at 117 (Brennan, J., concurring)).

Although the defendant's physical entrance into the forum state is not necessary to establish "purposeful availment," the defendant's contacts must amount to "a deliberate targeting of the forum."  *D'Jamoos*, 566 F.3d at 103 (quoting *O'Connor*, 496 F.3d at 317).  No evidence is present here to suggest that, in distributing its products to BGM, CCH deliberately targeted Pennsylvania markets.  Indeed, there is no evidence to suggest that CCH had any particular awareness of or control over the flow of its product into this Commonwealth via BGM.  *See Regan v. Loewenstein*, 292 Fed. Appx. 200, 204, 2008 WL 4173837 (3d Cir. Sept. 9, 2008) (rejecting plaintiff's assertion, based on stream-of-commerce theory, of specific jurisdiction over nonresident defendants who had allegedly stolen plaintiff's material for using in a competing publication; court noted that "Plaintiffs have not shown that any of the Defendants had the ability to control where the [competing] book would be distributed.").  Moreover, even if CCH was aware that its alien cams would make their way into the Commonwealth via its stream of commerce with BGM – an allegation which is not made here – a defendant's "mere knowledge or awareness that one's products will end up in the forum state without some regularity of shipment would not be enough."  *Renner*, 33

13

F.3d at 282.

Nor is it legally sufficient for jurisdictional purposes that one might conceive that sales of CCH's product to BGM might ultimately lead to the shipment of CCH's products into the Commonwealth. "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *D'Jamoos*, 566 F.3d at 105 (citations omitted).

In sum, the Plaintiff has failed to show that the Defendant CCH has the requisite minimum contact with this Commonwealth for purposes of establishing specific jurisdiction. With respect to CCH's distribution of products to BGM, Plaintiff has failed to show that, by this conduct, CCH purposefully directed its activities at the Commonwealth. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *D'Jamoos*, *supra*, at 102. As for CCH's relationship with its prior retail distributor Excursion, Plaintiff has not demonstrated that this litigation "arise[s] out of or relate[s] to" that activity. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *O'Connor*, 496 F.3d at 317. Accordingly, this Court will grant Defendant CCH's motion to dismiss the instant action for lack of personal jurisdiction.

B.

We next consider whether jurisdiction can be exercised over Defendant BGM. This question is easily resolved under the analysis set forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), and the Third Circuit's subsequent decision in *Toys "R" Us, Inc. v. Step two, S.A.*, 318 F.3d 446 (3d Cir. 2003).

In *Zippo*, this Court addressed the boundaries of personal jurisdiction over nonresident defendants whose only contact with the forum state consisted of internet usage. We noted, based on the emerging case law, that

the likelihood that personal jurisdiction can be constitutionally exercised is

14

> directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.  This sliding scale is consistent with well developed personal jurisdiction principles.  At one end of the spectrum are situations where a defendant clearly does business over the Internet.  If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.  *E.g. CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996).  At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.  A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction.  *E.g. Bensusan Restaurant Corp., v. King*, 937 F. Supp. 295 (S.D.N.Y.1996).  The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer.  In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.  *E.g. Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328 (E.D. Mo.1996).

*Zippo*, 952 F. Supp. at 1124.  We found that exercising personal jurisdiction over the defendant in that case was appropriate because the defendant, in conducting electronic commerce with Pennsylvania residents, had shown "a purposeful availment of doing business in Pennsylvania."  *Id*. at 1125-26.  In this regard, the defendant in *Zippo* had sold passwords to approximately 3,000 subscribers in the Commonwealth and entered into seven contracts with Internet access providers to furnish its services to their customers in the Commonwealth.  *Id*. at 1126.

We also rejected the defendant's claim in *Zippo* that, because its contacts with Pennsylvania were initiated by Pennsylvania residents, those contacts were merely "fortuitous" within the meaning of *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).  We reasoned:

> When a defendant makes a conscious choice to conduct business with the residents of a forum state, "it has clear notice that it is subject to suit there." *World-Wide Volkswagen*, 444 U.S. at 297, 100 S. Ct. at 567.  Dot Com was under no obligation to sell its services to Pennsylvania residents.  It freely chose to do so, presumably in order to profit from those transactions.  If a corporation determines that the risk of being subject to personal jurisdiction in a particular forum is too great, it can choose to sever its connection to the state.  *Id*.  If Dot Com had not wanted to be amenable to jurisdiction in Pennsylvania, the solution would have been simple – it could have chosen not to sell its services to Pennsylvania residents.

*Id*. at 1126-27.

15

In *Toys "R" Us, Inc.*, the Third Circuit considered whether the operation of a commercially interactive web site which is accessible in the forum state is sufficient by itself to support specific personal jurisdiction, or whether there must be additional evidence that the defendant has "'purposefully availed' itself of the privilege of engaging in activity in that state."  318 F.3d at 451-52.  The court held that such additional evidence *is* necessary, and that "it should reflect intentional interaction with the forum state."  *Id*. at 452.  However, the court stated that the requisite "purposeful availment" is satisfied "[i]f a defendant web site operator intentionally targets the site to the forum state, *and/or knowingly conducts business with forum state residents via the site."  Id.* (emphasis supplied).  Surveying the various case law from within and without this circuit, the Court of Appeals cited with implicit approval *Zippo*'s holding that personal jurisdiction exists "where the defendant is clearly doing business through its web site in the forum state" and "the claim relates to or arises out of use of the web site."  *Id*. (citing *Zippo*, 952 F. Supp. at 1124).

Other courts within this circuit have followed the analytical approach of *Toys "R" Us* and *Zippo* and agreed that intentional internet-based business transactions with customers in the forum state will establish the requisite minimum contacts.  *See, e.g., Square D Co. v. Scott Electric Co.*, Civil Action No. 06-00459, 2008 WL 4462298 at *11 (W.D. Pa. Sept. 30, 2008) (on-line business which knowingly sold and shipped the product which was the subject of the litigation to a Pennsylvania customer purposefully availed itself of the laws and privileges of the Commonwealth); *L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 588, 593-94 (D. Del. 2008) (defendants purposely availed themselves of doing business in state of Delaware where they operated a website accessible in Delaware, received orders and payments from customers in Delaware and shipped their products to Delaware).  *Accord Gourmet Video, Inc. v. Alpha Blue Archives, Inc.*, Civil Action No. 08-2158 (MCL), 2008 WL 4755350 at *3 (D.N.J. Oct. 29, 2008) ("Personal jurisdiction is properly exercised over a defendant using the Internet to conduct business in the forum state.").  *Cf. Hershey Co. v. Pagosa*

16

*Candy Co.*, No. 1:07-CV-1363, 2008 WL 1730538 at *8 (M.D. Pa.  April 10, 2008) (no minimum contacts established where defendant's website indicated that Pennsylvania was among the many destinations to which items could be shipped but only ten sales had been conducted via the defendant's web site and none of them involved Pennsylvania residents).

   Here, there is little doubt that BGM purposefully availed itself of the opportunity to conduct business with Pennsylvania residents via its web site.  As the Plaintiff sets out in his brief, BGM's website is interactive in the sense that it allows users to purchase merchandise online.  *See Toys "R" Us*, 318 F.3d at 450.  BGM maintains its website at "http://www.bentgate.com."  Various links appear under the banner of the flash page, allowing the viewer to perform various functions.  Among other things, visitors can request a catalog by supplying certain information according to the website prompts, contact the company directly by e-mail, subscribe to BGM's on-line newsletter, and search, view, and select products for on-line purchase via a "shopping cart."  Although BGM apparently provides catalogs upon request, it professes not to conduct a traditional mail order business.  Consequently, all of BGM's orders originating out of state must be received either via its website or telephonically.  According to BGM, even orders received telephonically are processed by BGM via its internet site.  Thus, its website is clearly interactive.

   While the mere maintenance of an interactive website accessible to Pennsylvanians would not, by itself, suffice to allow personal jurisdiction over BGM, *see Toys "R" Us*, 318 F.3d at 451-52, here there is additional evidence of purposeful availment.  Importantly, the record shows that BGM intentionally and repeatedly engaged in internet-based sales of its products to Pennsylvania residents via its website.  Jurisdictional discovery has revealed that, between 2006 and 2007, BGM received a total of 211 orders from (or for the benefit of) Pennsylvania residents, amounting to $41,566.05 in sales.  Thus, it is clear that BGM "repeatedly and consciously chose to process Pennsylvania residents' applications" for orders of its

goods. *See Toys "R" Us*, 318 F.3d at 452 (quoting *Zippo*, 952 F. Supp. at 1126).  Like defendants involved in *Zippo* and *Square D*, BGM's use of its website to conduct business with Pennsylvania residents  shows a "purposeful availment" of the opportunity to engage in commercial activity within this Commonwealth.

BGM argues that jurisdiction should not be exercised here because of the fact that its commerce with Pennsylvania represented only a small fraction of its overall internet sales.  Similar arguments were rejected in *Zippo* and *Square D*.  In *Zippo*, the defendant had argued that its forum-related activities were insufficient to create a "substantial connection" with Pennsylvania because only two percent of its subscribers were Pennsylvania residents.  952 F. Supp. at 1127.  We noted that:

> [T]he Supreme Court has made clear that even a single contact can be sufficient.  *McGee [v. International Life Ins. Co.]*, 355 U.S. 220, 223 (1957).  The test has always focused on the "nature and quality" of the contacts with the forum and not the quantity of those contacts.  *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 160.  The Sixth Circuit also rejected a similar argument in *CompuServe* when it wrote that the contacts were "deliberate and repeated even if they yielded little revenue."  *CompuServe*, 89 F.3d at 1265.

*Zippo*, 952 F. Supp. at 1127.

In *Square D Co.*, the defendant business's on-line commercial activity had yielded 24 Pennsylvania customers and a total of $10,238.25 in sales.  The defendants argued that this level of commercial activity relative to the website was insufficient to establish minimum contacts because it amounted to less than one percent (1%) of the company's total sales.  The court noted that, "[w]hile such an argument is valid in the context of general jurisdiction, in the context of specific jurisdiction it is evidence that supports Plaintiff's argument that the [defendants] purposefully availed themselves of the laws and privileges of Pennsylvania by selling and shipping products to residents of the Commonwealth."  2008 WL 4462298 at *9 n.10.  *See also L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 2d at 593-94 (defendants purposefully availed themselves of doing business with Delaware where they operated a website accessible in Delaware, received orders and payments from Delaware customers, and shipped

18

their products to Delaware, notwithstanding the fact that these sales constituted less than 1% of defendants' total annual sales based on units sold).

In sum, the evidence here is sufficient to show that BGM, through its interactive website, purposefully availed itself of the privilege of conducting business within this Commonwealth, notwithstanding the relatively small amount of internet-related sales that were generated here.  *D'Jamoos*, 566 F.3d at 102-03; *O'Connor*, 496 F.3d at 317. The second part of our jurisdictional inquiry is also easily satisfied because this litigation "arise[s] out of and relate[s] to" BGM's use of its web site to conduct internet-based sales of its merchandise to Pennsylvania residents.  *D'Jamoos*, 566 F.3d at 102; *O'Connor*, 496 F.3d at 317.  Accordingly, the Plaintiff has met his burden of establishing that BGM has the requisite minimum contacts with this forum.  *D'Jamoos*, 566 F.3d at 102.

This brings us to the third part of our jurisdictional inquiry – whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"[1]  *D'Jamoos*, 566 F.3d at 102 (quoting *Burger King*, 471 U.S. at 476).  As to this prong, the Defendant bears a heavy burden, for the existence of minimum contacts makes jurisdiction presumptively constitutional.  *See O'Connor*, 496 F.3d at 324; *Pennzoil Products Co.*, 149 F.3d at 207; *Grand Entertainment Group, Ltd.*, 988 F.2d at 483. Among the factors that may be relevant to our inquiry are "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies, ... and [t]he procedural and substantive interests of other nations."  *O'Connor*, *supra*, at 324 (internal and end citations omitted) (alteration in the original).

Notably, BGM has not even attempted to meet its burden at this stage, other

---

[1] Although our circuit court has, on occasion, referred to this prong as "discretionary," it is typically applied.  *See Pennzoil Products Co.*, 149 F.3d at 206.

than making the conclusory assertion that "this Court's exercise of personal jurisdiction would not comport with traditional concepts of fair play and substantial justice."  (Br. in Supp. of Renewed Mot. to Dismiss ov BGM [21] at p. 5.)  In any event, several factors weigh in favor of this Court exercising personal jurisdiction over BGM.  Because the Plaintiff is a citizen of this Commonwealth, Pennsylvania has a strong interest in adjudicating this case.  *See Burger King*, 471 U.S. at 473 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.") (quoting *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957)).  Pennsylvania also has an interest in this case based on social policy grounds, given its strict liability doctrine that the supplier of a product is considered to be the guarantor of its safety.  *See Azzarello v. Black Bros. Co., Inc.*, 391 A.2d 1020, 1024 (Pa. 1978).  The Plaintiff's interest in obtaining convenient and effective relief favors the exercise of jurisdiction over BGM because Plaintiff resides in this forum and has obtained counsel here.  Pennsylvania laws relating to negligence and strict products liability can provide effective relief.  As for "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" and "the shared interest of the several states in furthering fundamental social policies," no evidence exists on this record to suggest that these factors counsel against an exercise of jurisdiction over BGM.  The accident occurred in a neutral site in Kentucky and, to the extent this case would turn on expert testimony, no particular forum is obviously more convenient than another.  The burden of litigating in a foreign forum would be no less sever for the Plaintiff, were we to conclude that the litigation should be transferred to BGM's home state of Colorado.  On balance, despite the undeniable burden which the defense of this lawsuit in Pennsylvania will impose on BGM, that burden is justified by the strong interests of the Plaintiff and the Commonwealth in exercising jurisdiction over BGM in this matter.  *See Asahi Metal Indus. Co.*, 480 U.S. at 114 ("[W]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien

20

defendant.").

As a final note, I acknowledge several cases which BGM cites for the proposition that, where a defendant's website is neither targeted specifically to Pennsylvanians nor central to the defendant's business in Pennsylvania, it cannot serve as a basis for general jurisdiction.  *See Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162 (11th Cir. 2005); *O'Connor v. Sandy Lane Hotel Co., Ltd.*, No. Civ. A. 04-2436, 2005 WL 994617 at *3 (E.D. Pa. April 28, 2005), *modified on reconsideration by O'Connor v. Sandy Lane Hotel Co., Ltd.*, No. Civ. A. 04-2436, 2005 WL 1463250 (E.D. Pa. June 20, 2005), *judgment rev'd and remanded in non-relevant part*, 496 F.3d 312 (3d Cir. 2007); *Snyder v. Dolphin Encounters Limited*, 235 F. Supp. 2d 433, 440-41 (E.D. Pa. 2002).  These cases have no bearing on our present inquiry.  They address the sufficiency of a defendant's internet-related contacts in the forum state as it pertains to establishing general jurisdiction.  However, no claim has been made here that BGM is subject to general jurisdiction in the Commonwealth of Pennsylvania.  Accordingly, I need not address the cited authority further.


## IV.  CONCLUSION

For the reasons previously set forth, the Plaintiff has met his burden of establishing that specific personal jurisdiction exists as to Defendant BGM in this case. He has not met his burden of establishing personal jurisdiction over the Defendant CCH.  Accordingly, I will grant the motion of CCH to dismiss the instant claims against it for lack of personal jurisdiction and I will deny the corresponding motion filed by BGM. An appropriate order follows.

21

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MICHAEL WILLYOUNG,                    )
                                      )
                  Plaintiff,          )
                                      )
        v.                            )        Civil Action No. 1:08-cv-17-SJM
                                      )
COLORADO CUSTOM HARDWARE,             )
INC., *et al.*,                       )
                                      )
                  Defendant.          )


**O R D E R**

AND NOW, *to wit*, this 30th day of September, 2009, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS ORDERED that the Renewed Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) filed by Defendant Colorado Custom Hardware, Inc. [18] be, and hereby is, GRANTED; and the Renewed Motion to Dismiss filed by Defendant The Bent Gate, Inc. t/d/b/a Bent Gate Mountaineering [20] be, and hereby is, DENIED.


                                    s/    Sean J. McLaughlin_____

                                          SEAN J. McLAUGHLIN
                                          United States District Judge


cm:     All counsel of record.

22